May it please the Court, Jim Schiff on behalf of the Plaintiff Stanley Vrooman. This is a Social Security disability case in which the Administrative Law Judge made several errors. We are asking this Court to reverse because the ALJ's decision was not supported by substantial evidence. Specifically, we are contending that the ALJ's evaluation of Mr. Vrooman's symptoms was patently wrong. The ALJ's failure to weigh treating physician Dr. England's opinion under the 20 CFR 404 1527 C factors was not harmless error, and the ALJ's finding that Mr. Vrooman could sustain sedentary work with a sit-stand option at will was contrary to the evidence. Can I ask you, Mr. Schiff, can I ask you a question? Sure. I'm troubled by the sentence in the ALJ's opinion that says that Dr. England found the claimant could stand and sit 20 to 30 minutes at a time and needed frequent changes in position, which is generally consistent with the need to alternate sitting and standing at will. I think the ALJ adopted that in her ruling. Would you agree with that or not? I would agree with that. However, Dr. England also opined that Mr. Vrooman had to lay down and take breaks throughout the workday, which the ALJ did not adopt. Well, she doesn't specifically say that needed to lay down or take breaks, but she does say needed frequent changes in position, which is generally consistent with the need to alternate  Yes, I agree, Your Honor. The biggest problem with the case, though, is that the ALJ did not explain why the portions of Dr. England's opinion where he stated that Mr. Vrooman needed to lay down and take breaks were not adopted. And that's one of the reasons we're asking this court to reverse, because we believe the evidence does support that Mr. Vrooman needed to lay down and take breaks throughout the workday. And beyond that, had to not just sit and stand, but also move around, as he testified to at the hearing and as he mentioned in his reports to the administration. So in terms of the factual background, I just wanted to highlight a few things here. Mr. Vrooman has impairments, including degenerative disc disease of the lumbar spine, sacroiliac joint dysfunction, vestibular disorder, and diabetes with peripheral neuropathy. And he started to have health problems in 2011 when he fell from a ladder onto a cement driveway when he was working as a cable installation technician. And from that injury, he suffered pelvic and lumbar fractures and underwent surgeries to the right humerus and pelvis. So the primary limiting factor in his ability to work is this burning pain in his left leg, as well as pelvic pain. And that is the reason why he alleges that he cannot sit or stand for more than 20 to 30 minutes at a time. And also repeatedly stated that even if he were afforded the opportunity to alternate positions every 20 or 30 minutes, he could not sustain a full workday because he had to lay down to relieve pain or at least recline or at a minimum move around. So the ALJ's residual functional capacity finding does not allow him to do any of those things. It's simply a sit, stand, sit, stand sort of situation. So we are contending in this case that the ALJ's evaluation of Mr. Vrooman's symptoms was patently wrong because it lacked both explanation and support in the evidence. It lacked explanation because the ALJ never explained why she disbelieved Mr. Vrooman's testimony that he had to lie down or recline. And that matters because an individual who has to either lie down or recline cannot sustain sedentary work. Under Social Security Ruling 16-3P, an ALJ must provide specific reasons for the weight that she affords to the individual's symptoms that are consistent with and supported by the evidence. Because Mr. Vrooman repeatedly stated that he could not sustain work with the sit, stand option, the ALJ had to provide some reason, some evidence that he could. And also, the ALJ failed to mention critical pieces of evidence in this case. And none of the reasons she did provide for discounting his symptoms were supported by the evidence. So for example, the ALJ found that Mr. Vrooman received conservative treatment, but he underwent two surgeries, received trigger point injections, and took narcotic pain medications. He also went to the emergency room twice in 2016, which the ALJ did not mention in her decision. The ALJ found that Mr. Vrooman's pain was stable, but it was in fact worsening, particularly in 2018. The ALJ also found that his clinical findings were stable, but we have shown in our briefs that they were worsening because he started to display abnormal sensation in the lumbar spine and in the right knee, and some of those findings were absent earlier in time. And the ALJ failed to acknowledge that the pain relief from Mr. Vrooman's injections only lasted 60 to 90 minutes. Most significantly, the ALJ noted that Mr. Vrooman was working part-time at Walmart for 20 hours a week, but she failed to acknowledge that he stopped working in April 2016. The decision reads as if Mr. Vrooman was working continually for 20 hours a week through the date of the decision, but that is not true. Mr. Vrooman eventually cut his hours to 12 hours a week and then stopped working altogether. We are highlighting these discrepancies to show that the ALJ symptom evaluation was not supported by substantial evidence because it was supported by minimal to no evidence. Briefly to touch on Dr. England's opinion, as stated earlier, Dr. England opined that Mr. Vrooman needed to lie down or take breaks. And I want to highlight that Dr. England's opinion is supportive of Mr. Vrooman's testimony. So this is a situation where a claimant alleges a limitation, he has a treating physician who supports the limitation, and the ALJ still found that the limitation wasn't supportive and didn't give a reason for doing so. Dr. England, excuse me, Mr. Vrooman filed his application for benefits in January 2017, which is a filing date that occurred before the new regulations took effect for evaluating treating physician opinions. And that means that the ALJ was required to consider several factors in her decision for weighing that opinion, such as the length and nature of Dr. England's treatment relationship, the reason that he gave for the limitations, and his specialty as a pain management physician and rehabilitation specialist. And the ALJ did not discuss any of those reasons. Finally, I just want to briefly touch on the ALJ's residual functional capacity finding, and that the ALJ reached an independent medical conclusion as to the sit-stand-at-will option, because she afforded little weight to Dr. England's opinions, she afforded little weight to the state agency opinions, and the only rationale she gave for the sit-stand option was Mr. Vrooman's pain. Mr. Vrooman's pain does not limit him in the way that the ALJ found. And because she didn't cite any other evidence to show that his pain does limit him in the way that she found, we believe that this finding was not supported by substantial evidence, and this case merits reversal. I'll reserve the remainder of my time for rebuttal. Thank you, Your Honors. Thank you, Counsel. Mr. Levitt. Good morning. David Levitt on behalf of the Commissioner. May it please the Court. Considering the complex evidence in this case, the ALJ acknowledged that Mr. Vrooman had very significant limitations. Therefore, she limited Mr. Vrooman to sedentary work. That's the least exertionally demanding type of work under the regulations. The ALJ then went further. She gave manipulative, postural, and environmental limitations, and gave Mr. Vrooman the allowance to switch between sitting and standing. At this point, she turned it over to- Some of the terminology in these cases gets to me. You've now said several times that the ALJ gave Mr. Vrooman several limitations. That's like saying he gave him a common cold, right? He acknowledged that he had certain limitations, but the ALJ is not the source of them. You are correct. You know what it means to say gave someone limitations? It didn't kick him in the shin. He didn't, right? That's true, Your Honor. That's true. The ALJ acknowledged these limitations and then turned it over to the VE, to the vocational expert, and said, given these limitations, could Mr. Vrooman return to his past relevant work as a customer complaints clerk, a job that he had done for over three years? The vocational expert said, yes, Mr. Vrooman could perform that job. Therefore, in line with the regulations, the ALJ found that Mr. Vrooman was not disabled. In reaching her residual functional capacity finding of a limited range of sedentary work, the ALJ cited substantial evidence. In particular, she cited Mr. Vrooman's activities, the objective evidence, Mr. Vrooman's routine treatment, and improvement with that treatment. Turning to the activities, the ALJ noted that Mr. Vrooman had worked part-time at Walmart. Mr. Vrooman, during the time that he alleged that he was totally disabled, he also carried a spare tire six blocks, and a spare tire, of course, as well, was much heavier than the sedentary work that would have been allowed by the ALJ. The sedentary work, of course, having a maximum lifting of 10 pounds, and that Mr. Vrooman carried garbage two blocks to and from the garbage can regularly. In terms of the objective evidence, the ALJ acknowledged the mixed nature of the evidence. The ALJ noted sensory abnormalities, tenderness, and antalgic gait. But the ALJ also considered that Mr. Vrooman had normal strength, and that he had negative straight leg raising tests, which are tests to determine whether there's certain type of back pain, generally mild imaging studies, and that there were instances of intact sensation and normal gait amongst the abnormal observations. And that also, examining neurologists, Dr. Sullivan said that Mr. Vrooman was, quote, functioning quite well on his neurological exam. The ALJ also looked, as I mentioned, to the routine or conservative treatment. Mr. Vrooman was treated with medications, with injections, and with therapy. That type of treatment has been characterized by this, or has been found by this court in the past to be conservative treatment. Mr. Vrooman did have surgeries, as opposing counsel did mention. One of the surgeries, or the main surgery, was two years before Mr. Vrooman allegedly became disabled. It was not during the period before the ALJ. It was right at the beginning of the period before the ALJ. However, Mr. Vrooman did have some hardware from that earlier surgery removed, but that was not really an independent surgery during the relevant period. Finally, the ALJ looked to the improvement with treatment. In particular, Mr. Vrooman had vestibular therapy to help with his balancing and dizziness. He improved so much that he said that no further therapy was necessary. He wanted, he did not want any more therapy. The ALJ also looked to the medical opinions in this case. It's the ALJ's role under the regulations to weigh the medical opinions, and as this court has recognized, ALJ need not adopt any one medical opinion. In this case, there were conflicting medical opinions. It would have been impossible for the ALJ to fully adopt any of them. On one hand, you had the opinions of Drs. Wolcott and Mendonca that Mr. Vrooman could perform light work. The ALJ acknowledged that Mr. Vrooman had much greater limitations than that, so the ALJ did not, was more deferential to Mr. Vrooman than Drs. Mendonca and Wolcott. The ALJ also looked to Dr. England's opinion. The ALJ adopted some of Dr. England's restrictions, or the restrictions acknowledged by Dr. England, but declined to adopt others. The ALJ found that the evidence supported Dr. England's restriction to being unable to sit for more than 20 or 30 minutes, so the ALJ acknowledged that and gave a sit-stand option, and the ALJ also noted that her residual functional capacity finding was consistent with Dr. England's lifting limitation as the ALJ restricted Mr. Vrooman to sedentary work, which of course would require a lifting of only a maximum of 10 pounds. However, the ALJ found that the other evidence did not support Dr. England's opinion that Mr. Vrooman would be unable to sit for a six-hour period, and as I noted earlier, the conservative treatment, improvement with treatment, objective evidence, and Mr. Vrooman's activities were inconsistent with such a limitation. Now the ALJ's weighing of the evidence, the conflicting evidence, was reasonable. Even if this court would have weighed the evidence differently, that is not a reason to overturn the ALJ's decision. So as I noted, the ALJ cited substantial evidence in support of her decision. She found a restricted range of sedentary work, which of course is the most limiting type of work under the regulations, and then she asked a vocational expert about the effect of those restrictions. Vocational experts said they would not prevent Mr. Vrooman from returning to his past job that he had performed for three years. Therefore, the ALJ found Mr. Vrooman not disabled and that finding was reasonable and in line with the regulations. So if the court does not have any further questions or any questions... It doesn't sound like it, Mr. Labott. Thank you. So the commissioner asked that the court affirm the ALJ's decision and affirm the commission. Mr. Schiff, anything further? Yes, Your Honor. Just to highlight on some of the issues the commissioner raised. The commissioner talks about the ALJ's functional capacity finding as a benefit to Mr. Vrooman as a very limiting type of work. But the way that Social Security disability cases are decided is sort of an all or nothing decision. So an individual either has a disability, is under a disability for a certain period of time, or they're not. And Social Security does not assign percentages of impairment like the Veterans Administration or a workers' compensation matter. So the crux of the case is that even if the ALJ, or the ALJ in this case, did limit Mr. Vrooman in a restrictive manner, it was not restrictive in the way that Dr. England opined with a well-supported opinion. It was not restrictive in the way that Mr. Vrooman testified to. And the ALJ did not analyze critical pieces of evidence in reaching her conclusion. So we are contending that the residual functional capacity finding was arbitrary and therefore not supported by substantial evidence. If there are no further questions, thank you, Your Honors. Thank you very much, counsel. The case is taken under advisement.